IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

07 APR 11 PM 12: 11

| | |
|---|---|
| UNITED STATES OF AMERICA : <br><br> Plaintiff, <br><br> vs. : <br><br> : <br><br> : <br><br> CHRISTOPHER PAUL, <br> a.k.a. Abdul, <br> a.k.a. Abdul Malek, <br> a.k.a. Abdul Malik, <br> a.k.a Abdul Melik, <br> a.k.a Abdulmaled <br> a.k.a. Abdel Malek, : <br> a.k.a. Abdul Malek Kenyatta, : <br> a.k.a. Paul Kenyatta Laws, <br> a.k.a. Paul Laws, <br><br> : <br> Defendant. | No. **2:07 cr 87** <br><br> JUDGE **JUDGE FROST** <br><br> 18 U.S.C. § 371 <br> 18 U.S.C. § 2332a(a)(1), (2), (3) <br> 18 U.S.C. § 2332a(b) <br> 18 U.S.C. § 2339A(a) <br><br><br><br> **INDICTMENT** <br><br> **Under Seal** |

**THE GRAND JURY CHARGES:**

### General Allegation

At all times the name **"CHRISTOPHER PAUL"** is used in this Indictment, it is meant to refer to an individual who was born as "Paul Kenyatta Laws," and who changed his name, by court order, to "Abdulmalek Kenyatta" on March 16, 1989, and who changed his name, by court order, from "Abdulmalek Kenyatta" to "Christopher Paul," on April 28, 1994.

## Count 1

### Conspiracy to Provide Material Support and Resources to Terrorists

1. Beginning in 1989, the exact date being unknown to the grand jury, and continuing through the present, in the Southern District of Ohio and outside the jurisdiction of any particular state or district, defendant **CHRISTOPHER PAUL**, a.k.a Abdul, a.k.a. Abdul Malek, a.k.a. Abdul Malik, a.k.a Abdul Melik, a.k.a. Abdel Malek, a.k.a Abdulmaled, a.k.a. Abdul Malek Kenyatta, a.k.a. Paul Kenyatta Laws, a.k.a. Paul Laws, hereinafter "**CHRISTOPHER PAUL**," a United States citizen subject to the jurisdiction of the United States, did knowingly and unlawfully conspire to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b), with others both known and unknown to the grand jury, by means of providing personnel, namely, himself and others; by providing training and by providing equipment, knowing and intending that such support would be used in preparation for or in carrying out a conspiracy to destroy property and murder and maim persons located outside the United States, in violation of Title 18, United States Code, Section 956,

All in violation of Title 18, United States Code, Sections 371 and 2339A(a).

2. It was a part of the conspiracy that defendant **CHRISTOPHER PAUL**, in order to materially support terrorists, provided himself to terrorists, both known and unknown to the grand jury, for the commission of violent acts, such as the killing of persons and destruction of property, outside the United States.

3. It was a further part of the conspiracy, that defendant **CHRISTOPHER PAUL**, in order to materially support terrorists, traveled outside the United States to meet with a group of radical Islamic fundamentalist terrorists in Germany to provide himself and train them in matters

2

of recruitment and explosives.

4. It was a further part of the conspiracy that the defendant **CHRISTOPHER PAUL**, in order to materially support terrorists, provided money and equipment from the United States to places outside the United States.

5. It was a further part of the conspiracy that the defendant **CHRISTOPHER PAUL**, in order to materially support terrorists trained others inside the United States in order that these others might be ready to fight violent jihad outside the United States.

## OVERT ACTS

6. In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of Ohio and elsewhere:

(1) Defendant **CHRISTOPHER PAUL**, who was legally named "Paul Kenyatta Laws" at birth, changed his name to "Abdulmalek Kenyatta," by court order, on March 16, 1989.

(2) Defendant **CHRISTOPHER PAUL** applied for a U.S. passport in the name of "Abdulmalek Kenyatta" on March 28, 1990, requesting expedited issuance for an intended departure date of April 1, 1990. On March 30, 1990, defendant **CHRISTOPHER PAUL** was issued a U.S. passport in the name of "Abdulmalek Kenyatta."

(3) In approximately 1990, the exact date unknown to the grand jury, defendant **CHRISTOPHER PAUL** traveled overseas from the United States for the purpose of obtaining military-type training at a terrorist training camp and to further the purposes of violent jihad. In late 1990 or early 1991, the exact dates being unknown to the grand jury, defendant **CHRISTOPHER PAUL** traveled to Pakistan and Afghanistan.

(4) During this time period, defendant **CHRISTOPHER PAUL** offered himself to

3

persons in Pakistan and Afghanistan associated with al Qaeda as an individual dedicated to committing violent jihad, including the killing of human beings and the destruction of property and furthering the objectives of al Qaeda.

(5) In late 1990 or early 1991, while in Pakistan defendant **CHRISTOPHER PAUL** stayed at the Beit Ul Ansar guest house, located in Peshawar, Pakistan. Beit Ul Ansar was a guest house affiliated with al Qaeda, a subsequently designated foreign terrorist organization and a radical Islamic fundamentalist terrorism group.

(6) While at the al Qaeda- affiliated guest house in Peshawar, Pakistan, defendant **CHRISTOPHER PAUL** met a member of al Qaeda and a former personal pilot for Usama Bin Laden.

(7) During his stay in Pakistan, defendant **CHRISTOPHER PAUL** also established close relations with another al Qaeda member, Khalifah LNU, an al Qaeda member who was responsible for logistics and transporting personnel to and from al Qaeda training camps in Afghanistan.

(8) During this same time frame, the exact dates being unknown to the grand jury, defendant **CHRISTOPHER PAUL** traveled to Afghanistan and obtained training at an al Qaeda training camp. The training included, but was not limited to, use of assault rifles, grenades, rocket-propelled grenades, small unit tactics, and hand-to-hand combat.

(9) In approximately mid-1991, defendant **CHRISTOPHER PAUL** joined al Qaeda. Defendant **CHRISTOPHER PAUL** stayed at Beit ur Salam guesthouse, which was exclusively for al Qaeda members, and he was selected for and obtained advanced training in map reading, climbing, rappelling, military history, and explosive devices.

(10) During this time period, while in Pakistan, defendant **CHRISTOPHER PAUL** told a member of al Qaeda while at the guest house that he was there to "fight jihad."

(11) During this time period, in discussions with an al Qaeda member, defendant **CHRISTOPHER PAUL** told the al Qaeda member that he was angry that al Qaeda would even consider scaling back military operations because it was defendant **CHRISTOPHER PAUL's** opinion that al Qaeda should continue military operations and that defendant **CHRISTOPHER PAUL** was committed to such military operations even if al Qaeda was not.

(12) After receiving military-type training at an al Qaeda training camp in Afghanistan, defendant **CHRISTOPHER PAUL** returned to the United States, the exact date unknown to the grand jury, and instructed individuals in martial arts at a mosque in Columbus, Ohio.

(13) On February 9, 1993, defendant **CHRISTOPHER PAUL** applied for a passport in the name of "Abdul Malek Kenyatta" at the U.S. consulate in Vienna, Austria, stating that his previous passport had been "lost/stolen." The U.S. passport was issued in the name "Abdul Malek Kenyatta" on February 23, 1993.

(14) On March 3, 1993, defendant **CHRISTOPHER PAUL** entered the country of Slovenia using a passport in the name of "Abdul Malek Kenyatta." On or about March 4, 1993, defendant **CHRISTOPHER PAUL** left the country of Slovenia using the same passport.

(15) On or about July 28, 1993, defendant **CHRISTOPHER PAUL** obtained a stamp from the country of Croatia in his passport, under the name of Abdul Malek Kenyatta.

(16) From on or about October 26, 1993 through February 1, 1994, defendant **CHRISTOPHER PAUL** continued his travels outside the United States, using a passport in the

name of "Abdul Malek Kenyatta."

(17) On April 28, 1994, defendant **CHRISTOPHER PAUL,** changed his name from "Abdulmalek Kenyatta," to "Christopher Paul" by court order.

(18) On September 8, 1994, defendant **CHRISTOPHER PAUL** was issued a new passport reflecting his change in name from "Abdul Malek Kenyatta" to "Christopher Paul."

(19) In the middle to late 1990s, the exact dates unknown to the grand jury, defendant **CHRISTOPHER PAUL** and some of his co-conspirators would obtain, possess and watch videos depicting scenes of violence occurring in Muslim conflicts outside the United States in order to exhort those watching the videos to commit to fighting violent jihad.

(20) In the mid-1990s defendant **CHRISTOPHER PAUL,** expressed his admiration for Usama bin Laden, the leader of al Qaeda, to a co-conspirator known to the grand jury.

(21) In January 1997, defendant **CHRISTOPHER PAUL** received a fax from Europe from two co-conspirators, who asked defendant **CHRISTOPHER PAUL** on behalf of "the brothers," to find them a "true group and place to make jihad."

(22) On or about September 12, 1997, defendant **CHRISTOPHER PAUL** ordered a "currency verifier," a piece of equipment useful in the making of fraudulent documents and on or about September 15, 1997, said currency verifier was shipped to defendant **CHRISTOPHER PAUL.** A manufacturer's note states that it was "for export to Turkey."

(23) On or about April 24, 1998, defendant **CHRISTOPHER PAUL** conducted hiking, camping, and other training operations in Burr Oak State Park in the State of Ohio with several co-conspirators, both known and unknown.

(24) On or about February 3, 1999, defendant **CHRISTOPHER PAUL** obtained a passport in the name of "Christopher Paul," after defendant had claimed "water damage" to his old passport.

(25) Between approximately March 31, 1999 and January 31, 2000, a phone subscribed to by defendant **CHRISTOPHER PAUL** and a phone subscribed to by a co-conspirator in Germany, were in contact on forty-four (44) occasions.

(26) On or about April 16, 1999, defendant **CHRISTOPHER PAUL** traveled to Germany from the United States using his passport issued on February 3, 1999.

(27) On or about April 16, 1999, the exact date being unknown to the grand jury, defendant **CHRISTOPHER PAUL** provided explosives training to fellow co-conspirators in Germany and assisted them in recruiting new members to the group.

(28) In May 1999, the exact date being unknown to the grand jury, defendant **CHRISTOPHER PAUL** asked a person known to the grand jury to purchase a printer and flat-bed scanner for him..

(29) On or about May 9, 1999, the person known to the grand jury placed the order to purchase and purchased a printer and flat-bed scanner at the request of defendant **CHRISTOPHER PAUL**.

(30) On or about May 11, 1999 defendant **CHRISTOPHER PAUL** purchased a laser range finder.

(31) On or about June 6, 1999, defendant **CHRISTOPHER PAUL** shipped a flat-bed scanner to a group of "brothers," that is, his co-conspirators in Germany.

(32) During this same time period, mid-1999, defendant **CHRISTOPHER PAUL**

7

asked a person known to the grand jury to buy night-vision goggles.

(33) In mid-1999, defendant **CHRISTOPHER PAUL** showed a person known to the grand jury a laser range finder and demonstrated how it functioned on a nearby television tower in Columbus, Ohio.

(34) On or about November 12, 1999, the defendant, **CHRISTOPHER PAUL**, sent a wire transfer in the amount of $1,760, from a financial institution in the United States to a co-conspirator in Germany.

(35) On or about December 23, 2002, defendant **CHRISTOPHER PAUL** purchased two GPS watches, one of which he subsequently gave to a co-conspirator.

(36) On or about June 7, 2004, at his residence in Columbus, Ohio, defendant **CHRISTOPHER PAUL** stored the following items, including but not limited to a(n):

   i. a flat-bed scanner contained in a box addressed to Ababri Abdelilah, a member of a radical Islamic terrorist group in Germany, at Lessingstr 30, 65232, Taunussteinhahn, Germany

   ii. a night vision scope

   iii. an article on how to hook up an alternative power source to a night vision scope

   iv. a laser range finder

   v. a GPS watch

   vi. a military survival knife

   vii. one U.S. passport with defendant **CHRISTOPHER PAUL**'s photo and in the name of "Christopher Paul" issued on approximately February 3, 1999

viii. a letter addressed to F. Bashir, his future wife, from defendant **CHRISTOPHER PAUL** concerning the raising of "little mujahideen" return address indicating the sender as "Abdulmaled"

ix. documents related to currency verifier

(37) On or about November 6, 2005, defendant **CHRISTOPHER PAUL** stored the following at his residence in Columbus, Ohio:

i. a thermal fax containing names, phone numbers, and contact information for key al Qaeda leadership and associates

ii. a postcard to "brother" Abdul Malik from "brother" Karim Medhi

iii. a balaclava hood

(38) On about November 21, 2006, defendant **CHRISTOPHER PAUL** stored the following items at his father's residence in Columbus, Ohio:

i. a modified remote control boat

ii. books, literature, and manuals on how to make explosives, explosive devices, computer manuals

iii. a book on improvised land mines

iv. an article entitled, "How I designed the A-bomb"

v. a fanny pack, containing among other things, the following International Standard Book Numbers (ISBNs)::

(1) the ISBN # for book entitled, "Deathtrap !--Improvised Booby Trap Devices"

(2) the ISBN # for book entitled, "Guerrilla's Arsenal: Advanced

9

Techniques for Making Explosives and Time-Delay Bombs"

(3) the ISBN # for book entitled, "Smart Bombs Improvised Sensory Detonation Techniques and Advanced Weapons System"

(4) the ISBN # for book entitled, "Home Made C-4: A Recipe for Survival"

(5) the ISBN # for book entitled "Improvised Radio Detonation Techniques"

vi. also contained in the fanny pack was a U.S. passport in the name of Abdul Malek Kenyatta on February 23, 1993 bearing the likeness of defendant **CHRISTOPHER PAUL**

vii. contained in bags were various items of clothing typically worn in Afghanistan and Pakistan, in particular, a hat unique to a region in Afghanistan

viii. a letter from defendant **CHRISTOPHER PAUL** to parents explaining that he will be "on the front lines" and where to find out information on "jihad"

ix. a note on Farouk camp

x. various currencies, money and coins from countries in the middle east

xi. listings for 2 range finders

xii. listings for 2 hi-power binoculars

xiii. listings for 2 sniper guns with scopes

xiv. listings for 2 motocross motorcycles

xv. listings for maps

xvi. listings for first aid kit

    xvii. binoculars with built-in camera

    xviii. flat bed scanner

    xix. a second flat bed scanner

    xx. a radio scanner

    xxi. a crossbow

    xxii. metal darts

 (39) Beginning in 2006 and continuing thereafter, defendant **CHRISTOPHER PAUL** conducted research on the following items:

    i. remote controlled boats

    ii. gas, nitro-fueled radio controlled boats

    iii. remote controlled, 5-foot long, helicopter

    iv. flight-simulator computer programs, including how to fly large, commercial, passenger aircraft

 All in violation of Title 18, United States Code, Sections 371 and 2339A(a).

### Count 2

#### Conspiracy to Use Weapon of Mass Destruction

1. Beginning at a time unknown but not later than April 16, 1999 and continuing at least until about January 2000, in Germany and within the Southern District of Ohio and elsewhere, defendant **CHRISTOPHER PAUL,** a.k.a Abdul, a.k.a. Abdul Malek, a.k.a. Abdul Malik, a.k.a. Abdel Malek, a.k.a Abdul Melik, a.k.a Abdulmaled, a.k.a. Abdul Malek Kenyatta, a.k.a. Paul Kenyatta Laws, a.k.a. Paul Laws, a national of the United States, and other persons, known and

11

unknown to the grand jury, did knowingly and without lawful authority, conspire to use a weapon of mass destruction, namely, explosives to be used as bombs, and similar devices, against a United States national while he or she or both were outside the United States, namely, said bombs and similar devices to be used against European tourist resorts where American citizens are known to vacation; and against a person within the United States and the results of such use would have affected interstate commerce; and against property that is owned, leased, or used by the United States or a department or agency of the United States located outside the United States, namely, governmental facilities, such as U.S. embassies, diplomatic and consular premises, and military bases located in Europe.

2. In furtherance of the conspiracy, and to effect the objects thereof, the defendant committed the following overt act, among others, within the Southern District of Ohio and elsewhere:

### Overt Act

On or about April 16, 1999, the exact date being unknown to the grand jury, defendant **CHRISTOPHER PAUL,** a.k.a Abdul, a.k.a. Abdul Malek, a.k.a. Abdul Malik, a.k.a. Abdel Malek, a.k.a Abdul Melik, a.k.a Abdulmaled, a.k.a. Abdul Malek Kenyatta, a.k.a. Paul Kenyatta Laws, a.k.a. Paul Laws, provided explosives training to co-conspirators in Germany in order to assist them in preparing to conduct attacks using explosives on targets in Europe and the United States,

All in violation of Title 18, United States Code, Sections 2332a(a)(1), (2) and (3) and (b).

### Count 3

### Providing Material Support and Resources to Terrorists

1. Beginning at a time unknown but not later than April 16, 1999 and continuing at least until about January 2000, in the Southern District of Ohio and outside the jurisdiction of any particular state or district, defendant **CHRISTOPHER PAUL**, a.k.a Abdul, a.k.a. Abdul Malek, a.k.a. Abdul Malik, a.k.a. Abdel Malek, a.k.a Abdul Melik, a.k.a Abdulmaled, a.k.a. Abdul Malek Kenyatta, a.k.a. Paul Kenyatta Laws, a.k.a. Paul Laws, a United States citizen subject to the jurisdiction of the United States, did provide material support and resources as that term is defined in Title 18, United States Code, Section 2339A(b), namely currency, personnel and

equipment, knowing and intending that such material support would be used in preparation for and in carrying out a conspiracy to destroy property and murder and maim persons located outside the United States, in violation of Title 18, United States Code, Section 956,

All in violation of Title 18, United States Code, Section 2339A(a).

A TRUE BILL

S/

FOREPERSON

GREGORY G. LOCKHART
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF OHIO

By:

GARY L. SPARTIS
Assistant United States Attorney
Deputy Criminal Chief

SYLVIA T. KASER
Trial Attorney, National Security Division
Counterterrorism Section
U.S. Department of Justice